UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MALINDA J. GALBRAITH,              )
                                   )   No. CV-07-0373-JPH
              Plaintiff,           )
                                   )   ORDER GRANTING DEFENDANT'S
              v.                   )   MOTION FOR SUMMARY JUDGMENT
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social             )
Security,                          )
                                   )
              Defendant.           )
                                   )

BEFORE THE COURT are cross-motions for summary judgment, noted for hearing without oral argument on June 2, 2008. (Ct. Rec. 13, 17). Attorney Lora Lee Stover represents Plaintiff Malinda J. Galbraith ("Plaintiff"); Special Assistant United States Attorney Carol A. Hoch represents the Commissioner of Social Security ("Commissioner"). The parties have filed a consent to proceed before a magistrate judge. (Ct. Rec. 7). After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 17) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 13).

**JURISDICTION**

On December 10, 2004, Plaintiff filed a an application for Disability Insurance Benefits ("DIB") and an application for Supplemental Security Income ("SSI") benefits, alleging disability

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 1

since April 1, 2002.  (AR 21, 64-68).  Plaintiff's applications were denied initially and on reconsideration.  An administrative hearing was held before Administrative Law Judge ("ALJ") Richard A. Say on March 8, 2007.  (AR 293-330).  On June 25, 2007, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 21-30).  On October 26, 2007, the Appeals Council denied Plaintiff's request for review.  (AR 4-6).  Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed an action for judicial review pursuant to 42 U.S.C. § 405(g) on November 21, 2007.  (Ct. Rec. 1).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here.  Plaintiff was 35 years old on the date of the ALJ's decision.  (AR 26). Plaintiff completed the seventh grade in school and has past work as a kitchen helper/dishwasher and as a food wrapper.  (AR 94-101, 306-307, 323).  Plaintiff indicated that she became disabled on April 1, 2002, because she could not "physically, mentally or emotionally maintain like a civil human . . . ."  (AR 309).  She stated that she only had the mentality to be able to handle being a stay at home mom.  (AR 309).

Plaintiff testified that she lived in a house with the father of her third child, her twelve-year-old daughter, two dogs, two cats and, at the time of the administrative hearing, 12 puppies. (AR 307-308, 314).  She stated that she could read, write and do simple math.  (AR 308).  She indicated that she had not worked

since leaving her last job after being sexually harassed.  (AR
310).  With respect to drug use, Plaintiff testified that she had
not used marijuana on a regular everyday basis since completing
treatment three years prior to the hearing; however, she indicated
that she had continued to infrequently use marijuana.  (AR 316).
Plaintiff stated that she has been charged with domestic violence
once in the past four years and has twice been ordered by the
court to attend anger management classes.  (AR 320-321).

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as
the "inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental impairment
which can be expected to result in death or which has lasted or
can be expected to last for a continuous period of not less than
twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The
Act also provides that a Plaintiff shall be determined to be under
a disability only if his impairments are of such severity that
Plaintiff is not only unable to do his previous work but cannot,
considering Plaintiff's age, education and work experiences,
engage in any other substantial gainful work which exists in the
national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).
Thus, the definition of disability consists of both medical and
vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156
(9th Cir. 2001).

The Commissioner has established a five-step sequential
evaluation process for determining whether a person is disabled.
20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he is
engaged in substantial gainful activities.  If he is, benefits are

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 3

denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is not, the
decision maker proceeds to step two, which determines whether
Plaintiff has a medically severe impairment or combination of
impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

If Plaintiff does not have a severe impairment or combination
of impairments, the disability claim is denied.  If the impairment
is severe, the evaluation proceeds to the third step, which
compares Plaintiff's impairment with a number of listed
impairments acknowledged by the Commissioner to be so severe as to
preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d),
416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment
meets or equals one of the listed impairments, Plaintiff is
conclusively presumed to be disabled.  If the impairment is not
one conclusively presumed to be disabling, the evaluation proceeds
to the fourth step, which determines whether the impairment
prevents Plaintiff from performing work he has performed in the
past.  If Plaintiff is able to perform his previous work, he is
not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If Plaintiff
cannot perform this work, the fifth and final step in the process
determines whether Plaintiff is able to perform other work in the
national economy in view of his residual functional capacity and
his age, education and past work experience.  20 C.F.R. §§
404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish
a *prima facie* case of entitlement to disability benefits.
*Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.
Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is
met once Plaintiff establishes that a physical or mental

impairment prevents him from engaging in his previous occupation.
The burden then shifts to the Commissioner to show (1) that
Plaintiff can perform other substantial gainful activity and (2)
that a "significant number of jobs exist in the national economy"
which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498
(9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a
Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold
the Commissioner's decision, made through an ALJ, when the
determination is not based on legal error and is supported by
substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995
(9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.
1999). "The [Commissioner's] determination that a plaintiff is
not disabled will be upheld if the findings of fact are supported
by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572
(9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence
is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d
1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.
*McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);
*Desrosiers v. Secretary of Health and Human Services*, 846 F.2d
573, 576 (9th Cir. 1988). Substantial evidence "means such
evidence as a reasonable mind might accept as adequate to support
a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)
(citations omitted). "[S]uch inferences and conclusions as the
[Commissioner] may reasonably draw from the evidence" will also be
upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
On review, the court considers the record as a whole, not just the

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 5

1  evidence supporting the decision of the Commissioner. *Weetman v.*
2  *Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v.*
3  *Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

4      It is the role of the trier of fact, not this court, to
5  resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  If
6  evidence supports more than one rational interpretation, the court
7  may not substitute its judgment for that of the Commissioner.
8  *Tackett*, 180 F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579
9  (9th Cir. 1984).  Nevertheless, a decision supported by
10 substantial evidence will still be set aside if the proper legal
11 standards were not applied in weighing the evidence and making the
12 decision.  *Brawner v. Secretary of Health and Human Services*, 839
13 F.2d 432, 433 (9th Cir. 1988).  Thus, if there is substantial
14 evidence to support the administrative findings, or if there is
15 conflicting evidence that will support a finding of either
16 disability or nondisability, the finding of the Commissioner is
17 conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir.
18 1987).

19                       **ALJ'S FINDINGS**

20      The ALJ found at step one that Plaintiff has not engaged in
21 substantial gainful activity since her alleged onset date, April
22 1, 2002.  (AR 23).  At step two, the ALJ determined that Plaintiff
23 had the following severe impairments:  a depressive disorder, a
24 generalized anxiety disorder, a personality disorder mixed, a
25 substance abuse disorder and asthma.  (AR 23).  The ALJ noted that
26 while Plaintiff had been diagnosed with obstructive sleep apnea,
27 regular use of a C-PAP machine improved her symptoms.  (AR 24).
28 In addition, while Plaintiff complained of significant hearing

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 6

loss in both ears, Plaintiff failed to provide medical records which demonstrate a hearing impairment. (AR 24). The ALJ thus concluded that the reported sleep apnea did not constitute a severe impairment and that Plaintiff did not have a severe impairment related to her hearing. (AR 24).

After considering the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium exertion work. (AR 24). The ALJ determined that Plaintiff could occasionally lift or carry up to 50 pounds, frequently lift and carry up to 25 pounds, and stand or walk up to six hours in an eight-hour workday, with intermittent sitting. (AR 24). He indicated that Plaintiff had good use of her arms and hands for grasping, holding and turning objects, was capable of performing light and sedentary work, and, because of asthma, should avoid dust, fumes and gases. (AR 24). The ALJ concluded that Plaintiff should have only occasional, superficial interaction with the general public and superficial contact with co-workers. (AR 24-25). The ALJ further determined that Plaintiff's symptoms from her medications would not prevent her from functioning at the levels he indicated. (AR 25).

At step four of the sequential evaluation process, the ALJ found that, consistent with the opinions of the vocational expert and in comparing Plaintiff's RFC with the physical and mental demands of her past relevant work, Plaintiff was able to perform her past relevant work as a kitchen helper/dishwasher and a food wrapper. (AR 29). Accordingly, the ALJ determined, at step four of the sequential evaluation process, that Plaintiff was not disabled within the meaning of the Act. (AR 29-30).

1                                    **ISSUES**

2        Plaintiff contends that the Commissioner erred as a matter of

3   law.  Specifically, she argues that:

4        1.   The ALJ's assessment of Plaintiff's mental limitations

5   was not in conformity with the evidence of record;

6        2.   The ALJ's opinion that Plaintiff is not credible is not

7   supported by the record; and

8        3.   The ALJ's hypothetical presented to the vocational

9   expert was not complete.

10       This Court must uphold the Commissioner's determination that

11  Plaintiff is not disabled if the Commissioner applied the proper

12  legal standards and there is substantial evidence in the record as

13  a whole to support the decision.

14                                  **DISCUSSION**

15  **I.  RFC Determination**

16       Plaintiff asserts that the ALJ failed to properly assess her

17  RFC.  (Ct. Rec. 14 at 8-10).  Plaintiff argues that limitations

18  assessed by Drs. Everhart and Michels reflect more serious

19  limitations than those given by medical expert, Dr. Bostwick.

20  (Ct. Rec. 14 at 9).

21       RFC is defined as the most one can still do despite the

22  individual's limitations.  20 C.F.R. §§ 404.1545(a)(1),

23  416.945(a)(1).  In making his RFC determination, the ALJ considers

24  Plaintiff's symptoms, including pain, and the extent to which

25  these symptoms can be reasonably accepted as consistent with the

26  objective medical evidence and other evidence of record.  The ALJ

27  ///

28  ///

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 8

also considers the opinions of acceptable medical sources which
reflect the judgment about the nature and severity of the
impairments and resulting limitations.

The ALJ found that Plaintiff had the RFC to perform medium
exertion work. (AR 24). The ALJ determined that Plaintiff could
occasionally lift or carry up to 50 pounds, frequently lift and
carry up to 25 pounds, and stand or walk up to six hours in an
eight-hour workday, with intermittent sitting. (AR 24). He
concluded that Plaintiff should have only occasional, superficial
interaction with the general public and superficial contact with
co-workers, and that Plaintiff's symptoms from her medications
would not prevent her from functioning at the levels indicated.
(AR 24-25). This RFC determination is supported by the weight of
the evidence of record.

Plaintiff was examined by Joyce Everhart, Ph.D., on June 6,
2003. (AR 123-131). At the outset, it is significant to note
that while the check-box psychological/psychiatric evaluation form
Dr. Everhart filled out appears to indicate some greater
limitations than those accounted for in her narrative report (AR
128-131), a check-box form is entitled to little weight. *Crane v.
Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's
rejection of a check-off report that did not contain an
explanation of the bases for the conclusions made was
permissible). Certainly, the doctor's narrative explanation which
describes Plaintiff's limitations in detail is entitled to more
weight than boxes checked on an accompanying form. Dr. Everhart
///
///

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 9

also indicated on the psychological/psychiatric evaluation form
that Plaintiff's reported regular use of marijuana in conjunction
with her prescribed medication affected the assessment of
Plaintiff's functional limitations on the form (AR 130) and noted
that with medication compliance, Plaintiff's functioning ability
should "substantially improve" (AR 131).

With respect to Dr. Everhart's narrative report, Plaintiff
reported she was bipolar, had sleep apnea, had a history of
substance abuse, including marijuana, meth and crank, reportedly
in remission, and had a nicotine addition. (AR 123). Plaintiff
also indicated that she continued to use marijuana. (AR 124).
Plaintiff reported she was fired from her last job when she
overslept and that a job at Davis Island in Florida ended because
she moved. (AR 124). Plaintiff stated, "I know nothing more than
how to cook, clean and take care of kids." (AR 124-125). Dr.
Everhart opined that Plaintiff appeared to have no desire to work
outside the home and would like to be on SSI. (AR 127). Dr.
Everhart indicated that Plaintiff's "greatest desire" was to be on
SSI to allow her to have a regular, more substantial income. (AR
127).

Dr. Everhart found that Plaintiff had good long-term memory,
was aware of current events, does not need in-home care to perform
her activities of daily living and can take care of her family,
including doing chores, doing laundry and cooking. (AR 125). Dr.
Everhart diagnosed a bipolar disorder as per history from medical
records, although not confirmed by the MMPI, substance abuse
(marijuana on a regular basis by self-report), and a personality
disorder, NOS, with antisocial and dependent features, gave

Plaintiff a Global Assessment of Functioning ("GAF") score of 65[1]
and indicated that it was unclear how the interactions of her
regular marijuana use and the prescribed medications were
affecting her ability to function.  (AR 127-128).

     While Dr. Everhart noted no clear evidence of malingering (AR
125), Dr. Everhart indicated that there were some questions with
regard to Plaintiff's credibility in the area of what particular
types of drugs she may or may not have been using (AR 127).  Dr.
Everhart opined that Plaintiff's pace was adequate and that
Plaintiff should be able to do repetitive jobs with little or no
problem.  (AR 127).  She determined that Plaintiff's concentration
and persistence appeared to be within normal limits, and,
intellectually, she appeared to be functioning within the normal
range.  (AR 127).  Dr. Everhart indicated that Plaintiff should be
able to make adequate progress in an educational and/or work-
related training program.  (AR 127).

     The ALJ accorded Dr. Everhart's opinion significant weight
because of the lack of any contradictory records and the fact that
testing supported her opinions.  (AR 27).

     On March 3, 2005, Plaintiff was examined by Paul Michels,
M.D.  (AR 213-219).  Dr. Michels noted it seemed Plaintiff only
visited mental health professionals for required evaluations; for
example, when Plaintiff was trying to get welfare benefits.  (AR
215).  With respect to her last employment, Plaintiff reported to
Dr. Michels that she decided to quit when confronted about not

---

     [1]A GAF of 70-61 is characterized as:  "Some mild symptoms
or some difficulty in social, occupational, or school
functioning, but generally functioning pretty well."  DIAGNOSTIC
AND STATISTICAL MANUAL OF MENTAL DISORDERS 12 (3d ed. Rev. 1987).

showing up for work after oversleeping.  (AR 216).  She indicated that she had never been fired, but would often walk off jobs feeling that she was being treated poorly.  (AR 216).  Plaintiff indicated that she continued to use marijuana on a daily basis, three or four times a day, and has a history of drinking alcohol excessively.  (AR 216).  Plaintiff reported that she dresses and bathes herself independently, prepares her own meals and meals for everyone in the household and does most of the household chores with help from her daughters.  (AR 217).  Dr. Michels diagnosed marijuana abuse, a depressive disorder, NOS, a generalized anxiety disorder and a borderline personality disorder and gave Plaintiff a GAF score of 55.[2]  (AR 218).  Dr. Michels indicated that chronic marijuana use can contribute to and perpetuate depressive symptoms and can also make antidepressant medication treatment less effective.  (AR 218).  He opined that Plaintiff's focus and concentration appeared adequate, but her pace and persistence seemed poor.  (AR 219).  He indicated that although Plaintiff may have the intellectual capacity to understand, remember and follow both complex and simple instructions, her affective instability and maladaptive coping mechanisms may create occasional to frequent difficulties completing specific tasks in a timely or consistent manner and that interactions with others would likely pose great difficulty.  (AR 219).

///

///

---

[2]A GAF of 60-51 reflects:  Moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994).

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 12

1      The ALJ indicated that Dr. Michels' opinion was based on an

2  interview with no objective testing and; therefore, was based

3  solely on Plaintiff's subjective complaints[3] interpreted in the

4  psychiatric setting.  (AR 27).  The ALJ also noted that Dr.

5  Michels' assessed level of impairment was inconsistent with the

6  opinions of Drs. Everhart and Bostwick.  (AR 27).

7      The ALJ accorded greater weight to the opinions of Drs.

8  Everhart and Bostwick.  (AR 27).  Specifically, while Dr. Michels

9  opined that Plaintiff was limited in completing tasks and in

10 reacting to stress (AR 219), Dr. Everhart, after clinical testing,

11 determined that Plaintiff appeared to be emotionally stable, her

12 pace was adequate and her concentration and persistence appeared

13 to be within normal limits (AR 127).  Dr. Bostwick also dismissed

14 Dr. Michels' opinion regarding Plaintiff's pace and persistence

15 finding that actual testing placed her concentration, attention

16 and persistence within normal limits.  (AR 305).  The ALJ properly

17 discounted Dr. Michels' medical report.  (AR 27).

18     Medical expert Allan D. Bostwick, Ph.D., testified at the

19 administrative hearing held on March 8, 2007.  (AR 297-306).  Dr.

20 Bostwick indicated that the record contained only two mental

21 health reports, those of Drs. Everhart and Michels.  (AR 298).  He

22 stated that it was difficult to evaluate Plaintiff without drugs

23 and alcohol, because it appeared to be continuous throughout the

24 record.  (AR 300).  Dr. Bostwick opined that, without drugs and

25

26      [3]As determined in Section II, below, the ALJ did not err
   by finding Plaintiff not entirely credible.  *See infra*.  A
27 physician's opinion may be disregarded when it is premised on
   the properly rejected subjective complaints of Plaintiff.
28 *Tonapetyan v. Halter*, 242 F.3d  1144, 1149 (9th Cir. 2001).

alcohol Plaintiff would have a moderate limitation with her
ability to interact appropriately with the general public but
would otherwise have no limitations or no significant limitations
with her functioning ability.  (AR 301-302).  Taking drug and
alcohol use into consideration, Dr. Bostwick indicated that the
limitations mostly increased by one step.  (AR 302-303).  As noted
above, Dr. Bostwick also discounted Dr. Michels' opinion that
Plaintiff's pace and persistence seemed poor indicating that
actual testing placed her concentration, attention and persistence
within normal limits.  (AR 305).  The ALJ accorded Dr. Bostwick's
opinion significant weight, indicating that he had the opportunity
to review all of the record evidence.  (AR 27-28).

It is the responsibility of the ALJ to resolve conflicts in
medical testimony and resolve ambiguities. *Saelee v. Chater*, 94
F.3d 520, 522 (9th Cir. 1996).  The Court thus has a limited role
in determining whether the ALJ's decision is supported by
substantial evidence and may not substitute its own judgment for
that of the ALJ even if it might justifiably have reached a
different result upon de novo review.  42 U.S.C. § 405(g).
Contrary to Plaintiff's arguments, the record does not support a
more restrictive RFC determination than as assessed by the ALJ in
this matter.  The ALJ's reliance on the findings of the medical
expert and the opinion of Dr. Everhart, as consistent with the
credible evidence of record, was proper in this case.  The ALJ's
RFC finding is supported by substantial record evidence and free
of error.

///

///

**II. Plaintiff's Credibility**

Plaintiff argues that the ALJ erred by improperly rejecting Plaintiff's testimony without giving adequate reasons.  (Ct. Rec. 14 at 10).  The undersigned does not agree.

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once Plaintiff produces medical evidence of an underlying impairment, the ALJ may not discredit Plaintiff's testimony as to the severity of an impairment because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be "clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The ALJ may consider at least the following factors when weighing Plaintiff's credibility:  Plaintiff's reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, Plaintiff's daily activities, Plaintiff's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir.

///

///

2002).  If the ALJ's credibility finding is supported by
substantial evidence in the record, the court must not engage in
second-guessing.  *Id.* at 959.

The ALJ considered the evidence of record and concluded that
Plaintiff's medically determinable impairments could reasonably be
expected to produce the alleged symptoms, but that Plaintiff's
statements concerning the intensity, persistence and limiting
effects of these symptoms were not entirely credible.  (AR 26).
The ALJ discussed the evidence of record and determined that
Plaintiff's testimony was not fully credible.  (AR 26).

As indicated by the ALJ, it is significant that there is no
testimonial or documentary evidence supporting Plaintiff's claim
that she is not able to work due to her mental impairments.  (AR
26).  To the contrary, Dr. Everhart opined that Plaintiff should
be able to do repetitive jobs with little or no problem.  (AR
127).  She determined that Plaintiff should be able to make
adequate progress in an educational and/or work-related training
program.  (AR 127).  In addition, as noted by the ALJ, Plaintiff's
employment relationships appeared to end mostly on Plaintiff's own
volition rather than due to her impairments.  (AR 26).  The record
reflects that Plaintiff ended one job because she moved and walked
off or quit other jobs.  (AR 26, 216, 310, 318).

The ALJ also noted inconsistencies in Plaintiff's statements.
(AR 26).  Inconsistencies in a disability claimant's testimony
supports a decision by the ALJ that a claimant lacks credibility.
*Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986).  With respect
to her last employment, Plaintiff testified at the administrative
hearing that she left her last job after being sexually harassed.

(AR 310).  However, Plaintiff reported to Dr. Michels that she
decided to quit her last job when confronted about not showing up
for work after oversleeping.  (AR 216).  She indicated to Dr.
Michels that she has never been fired.  (AR 216).  Yet, Plaintiff
reported to Dr. Everhart that she was fired from her last job when
she overslept.  (AR 124).  These inconsistent statements were
properly noted by the ALJ in assessing Plaintiff's credibility.
(AR 26).

Furthermore, despite the urging by Plaintiff's primary care
providers, Plaintiff did not seek care from a mental health
professional.  (AR 26).  Noncompliance with medical care or
unexplained or inadequately explained reasons for failing to seek
medical treatment cast doubt on a claimant's subjective
complaints.  20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885
F.2d 597, 603 (9th Cir. 1989).  On May 31, 2001, David Weaver,
ARNP, stated that he "[w]ould like to still have her get [the]
benefit of [a] psychiatric evaluation with medication
recommendation."  (AR 158).  On October 4, 2001, Mr. Weaver
indicated that Plaintiff would benefit from an evaluation by a
psychiatrist, gave Plaintiff a note asking for a referral to
Community Mental Health, and requested that Plaintiff make contact
with them.  (AR 160).  On April 8, 2002, Douglas R. Gwinn, M.D.,
reported that Plaintiff had still not seen a psychiatrist and
stated that "she needs to get into Spokane County Mental Health
and be evaluated."  (AR 168).  On May 14, 2003, Mr. Weaver
requested that Plaintiff follow up with a psychiatric evaluation.
(AR 192).  He indicated that "I really would still like her to
have a psychiatry evaluation."  (AR 192).  Nevertheless, Plaintiff

apparently did not follow through with the requests by her primary care providers to be seen by a mental health professional.

While there is no affirmative evidence of malingering in the record, it is significant to note that Dr. Everhart indicated there were some questions with regard to Plaintiff's credibility in the area of what particular types of drugs she may or may not have been using. (AR 127). Furthermore, Plaintiff reported to Dr. Everhart that her "greatest desire" was to be on SSI to allow her to have a regular, more substantial income. (AR 127). Dr. Everhart opined that Plaintiff appeared to have no desire to work outside the home and would like to be on SSI. (AR 127). The Ninth Circuit has recognized that the ALJ may properly consider the issue of motivation in assessing credibility. *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).

Finally, the ALJ also addressed Plaintiff's testimony describing her daily activities. (AR 26). It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Inconsistent with Plaintiff's allegation of disability, Plaintiff testified that she lived in a home with her boyfriend and 12-year-old daughter and reported doing the cooking, and, occasionally with some help, the household chores including vacuuming, taking care of the pets,[4] doing the laundry and doing the grocery shopping. (AR 26).

---

[4]The undersigned notes the record reflects that at the time of the administrative hearing Plaintiff cared for two dogs, 12 puppies, and two cats. (AR 307-308, 314). The record also shows that she cared for other household pets during the relevant time period, including fish and birds. (AR 217).

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 18

After reviewing the record, the undersigned finds that the reasons provided by the ALJ for finding Plaintiff not fully credible, as outlined above, are clear and convincing and supported by substantial evidence in the record.  Accordingly, the ALJ did not err by concluding that Plaintiff's testimony was not entirely credible in this case.

**III.   Step Four Determination**

Plaintiff lastly contends that the ALJ's step four analysis is unsupported because the hypothetical question posed to the vocational expert was incomplete.  (Ct. Rec. 14 at 11).

Social Security Ruling ("SSR") 82-61 provides that, pursuant to 20 C.F.R. § 404.1520(e) and § 416.920(e), a claimant will be found not disabled when it is determined she retains the RFC to perform either the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  SSR 82-61.  "If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  Plaintiff thus has the initial burden of demonstrating she cannot perform her past relevant work. *Hoffman v. Heckler,* 785 F.2d 1423, 1425 (9th Cir. 1986).  Only after Plaintiff establishes her inability to perform her previous work does the burden shift to the Commissioner to show that Plaintiff can do less demanding substantial gainful work which exists in the national economy. *Hoffman,* 785 F.2d at 1425.

///

Regarding the findings that must be made at step four, SSR
82-62 provides:

> In finding that an individual has the capacity to perform a
> past relevant job, the determination or decision must contain
> among the findings the following specific findings of fact:
> (1) A finding of fact as to the individual's residual
> functional capacity (RFC); (2) A finding of fact as to the
> physical and mental demands of the past job/occupation;
> (3) A finding of fact that the individual's RFC would permit
> a return to his or her past job or occupation.

SSR 82-62.

As determined above, the ALJ's RFC finding was proper in this
case. *See supra*. Accordingly, the ALJ appropriately concluded
that Plaintiff was capable of performing at least medium exertion
level work with only occasional, superficial interaction with the
general public and superficial contact with co-workers. (AR 24-
25).

Vocational expert Dr. Joseph A. Moisan testified that
Plaintiff's past work as a kitchen helper/dishwasher was medium
exertion level work and her past work as a food wrapper was light
work. (AR 323). Based on a hypothetical which included the
limitations assessed by the ALJ in this case, the vocational
expert testified that the individual would be capable of
performing Plaintiff's past relevant work as a kitchen
helper/dishwasher and a food wrapper. (AR 323-324).

At step four of the sequential evaluation process, the ALJ
found that, based on Plaintiff's RFC and the vocational expert's
testimony, Plaintiff was capable of performing her past relevant
work as a kitchen helper/dishwasher and a food wrapper. (AR 29).
Consistent with the vocational expert's testimony, the ALJ made a
finding that Plaintiff's past relevant work as a kitchen
helper/dishwasher was medium exertion work and her past work as a

food wrapper was light exertion level work.  (AR 29, 323).  The
ALJ properly compared Plaintiff's RFC with the demands of her past
work and concluded that Plaintiff would be able to perform the
jobs as typically performed.  (AR 29).  The ALJ's step four
findings were consistent with the directives of SSR 82-62.  The
undersigned finds that the ALJ's step four determination is
without error.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, the
Court finds that the ALJ's decision is supported by substantial
evidence and free of legal error.  Plaintiff is thus not disabled
within the meaning of the Social Security Act.  Accordingly,

**IT IS ORDERED**:

1.    Plaintiff's Motion for Summary Judgment (**Ct. Rec. 13**)
is **DENIED**.

2.    Defendant's Motion for Summary Judgment (**Ct. Rec. 17**)
is **GRANTED**.

3.    The District Court Executive is directed to enter
judgment in favor of Defendant, file this Order, provide a copy to
counsel for Plaintiff and Defendant, and **CLOSE** this file.

**IT IS SO ORDERED.**

**DATED** this ____23^rd____ day of June, 2008.

*S/James P. Hutton*
JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE